# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | James F. Holderman | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 02 C 7253 | **DATE** | 12/16/2003 |
| **CASE TITLE** | USA ex rel PEEPLES vs. BRILEY | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m)  ☐ Local Rule 41.1  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).

(10) ■ [Other docket entry]  Pursuant to Memorandum Opinion and Order entered this day, the petition for habeas relief is denied in its entirety.

(11) ■ [For further detail see order attached to the original minute order.]

| | |
|---|---|
| No notices required, advised in open court. | |
| No notices required. | number of notices |
| Notices mailed by judge's staff. | DEC 1 7 2003 |
| Notified counsel by telephone. | date docketed |
| ✓ Docketing to mail notices. | |
| Mail AO 450 form. | |
| Copy to judge/magistrate judge. | |

U.S. DISTRICT COURT
CLERK
03 DEC 16 PM 7: 45

JS — courtroom deputy's initials

Document Number
23

date mailed notice

mailing deputy initials

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

[DOCKETED]

DEC 1 7 2003

|  |  |  |
|---|---|---|
| UNITED STATES of AMERICA ex re. WILLIAM PEEPLES, | ) ) ) |  |
| Petitioner, | ) ) |  |
| v. | ) ) |  |
| KENNETH R. BRILEY, Warden, | ) ) | No. 02 C 7253 |
| Respondent. | ) ) ) |  |

## MEMORANDUM OPINION AND ORDER

JAMES F. HOLDERMAN, District Judge:

On March 7, 1990, pro se petitioner William Peeples ("Peeples") was convicted in an Illinois Circuit Court of first degree murder, home invasion and aggravated arson, and was sentenced to death for the murder conviction and to concurrent thirty-year terms of incarceration for the convictions of home invasion and aggravated arson. On January 11, 2003, Peeples's death sentence was commuted to natural life in prison. After exhausting the state post-conviction appellate process, Peeples filed a petition for writ of habeas corpus with this court on June 5, 2003 pursuant to 28 U.S.C. § 2254. In this petition, Peeples asserts thirty-three separate grounds, which he claims entitle him to habeas relief. For the following reasons, Peeples's petition is denied in its entirety.

## STATEMENT OF FACTS

On May 18, 1988, Ms. Dawn Dudovic was murdered in her apartment.[1] Ms. Dudovic shared

---

[1] These facts are taken from the opinion of the Illinois Supreme Court on direct appeal. (State's Ex. E at 1-6.)

23

this apartment, which is located in Schaumburg, Illinois, with her roommate Pamela Killeen ("Killeen"). Peeples and his fiancee, Vanessa Allen, lived in an apartment adjacent to the victim's apartment. Upon returning home on May 18, Killeen noticed a piece of paper towel stained with blood wedged in her apartment door, which prevented the door from locking. After entering the apartment Killeen found Dawn Dudovic lying on her back on the kitchen floor. The back of Ms. Dudovic's dress was pulled up to the buttocks, while the front of the dress was pulled up to the waist, exposing her pantyhose and underwear.

Killeen immediately sought help. She pounded on the door of the apartment next door where Peeples lived with his fiancee. No one answered. Killeen screamed for help because she heard the sound of a radio or television inside Peeples's apartment. After obtaining the help of another neighbor, fire department paramedics and police were called to the scene and confirmed that Dawn Dudovic was dead.

Peeples was arrested attempting to exit through a bedroom window approximately two hours later, after police noticed smoke coming from the apartment where he resided. Peeples's left hand was bleeding profusely. Upon searching Peeples's apartment, the police discovered that a dozen small fires, consisting of small piles of items, including clothing, bedding, Peeples's wallet, and a knife with a stained wooden handle, had been burning.

At trial, a physician opined that the cut in Peeples's left hand was made by an instrument such as a knife. Evidence also established that Peeples was left-handed, and an autopsy revealed that Dawn Dudovic died of multiple stab wounds. Furthermore, blood that matched Peeples's blood type, but not the victim's, was collected from the victim's apartment, and blood that matched the victim's type, but not Peeples's, was found on the knife recovered from Peeples's apartment and on

his wristwatch.

Peeples testified that he spent the day in his apartment and that the wound on his hand had occurred when he attempted to open a still-frozen package of pork chops. After cutting himself, Peeples testified he lay down and fell asleep. He awoke to the police knocking on his door. He did not answer because he was not on the lease, and he feared that his fiancee would lose her security deposit if it was discovered that he was living there. He also testified that he attempted to leave the apartment through the bedroom window because he saw smoke and fire. On cross-examination Peeples testified to his belief that the police broke into his apartment and set the fires to force him to come out.

During the pendency of Peeples's post-conviction appeal, the State and Peeples entered into an agreement for forensic DNA testing of the blood recovered from the victim's apartment. (State's Ex. L at 21.) The Illinois State Forensic Science Center determined that the blood taken from the victim's apartment matched Peeples's DNA profile and could not have come from the victim. (Id.) At Peeples's request, the blood was tested by an independent laboratory that concluded neither the processing nor the conclusions reached by the State laboratory were in error. (Id.)

## STANDARD OF REVIEW

"The Antiterrorism and Effective Death Penalty Act of 1996 [("AEDPA")] modified a federal habeas court's role in reviewing state prisoner applications in order to prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under the law." McFowler v. Jaimet, No. 03-1162, slip op. at 17 (7th Cir. Nov. 13, 2003) (citing Bell v. Cone, 535 U.S. 685, 693 (2002)). Under the AEDPA, habeas relief will only be granted when a petitioner establishes that the proceedings in state court resulted in a decision (1) "that was contrary to, or

3

involved an unreasonable application of, clearly established Federal Law, as determined by the Supreme Court of the United States," or (2) "that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). "The relevant decision, for purposes of this assessment, is the decision of the last state court to rule on the merits of the petitioner's claim." McFowler v. Jaimet, No. 03-1162, slip op. at 17 (7th Cir. Nov. 13, 2003).

With respect to the first prong of § 2254(d) "relief may be granted if the petitioner shows that, despite identifying the correct rule of law, the state court unreasonably applied it to the facts of the case." Harding v. Walls, 300 F.3d 824, 827-28 (7th Cir. 2002) (citations omitted). An unreasonable application of federal law is not, however, the same as an incorrect application, and only the former will result in the grant of habeas. Woodford v. Visciotti, 537 U.S. 19, 24-25 (2002). Petitioner maintains the burden of demonstrating that the state court decision was unreasonable. Id.

A state procedural default of any federal claim will bar federal habeas relief unless the petitioner demonstrates cause and actual prejudice or where review is necessary to correct a fundamental miscarriage of justice. Coleman v. Thompson, 501 U.S. 722, 748 (1991).

## ANALYSIS

Petitioner presents thirty-three separate claims for habeas relief by directing the court to the portion of his habeas petition that lists the issues he previously presented to the Illinois courts on direct and post-conviction review. (Pet. at 5.) With a few exceptions, this court will address petitioner's claims in the same order he presents them. Petitioner claims he raised the first twenty-seven issues on direct review. These claims are analyzed in three separate sections: (I) issues raised on direct review, (II), sentencing issues, and (III) issues raised on state post-conviction review.

4

This court is barred from reviewing the issues raised in claims (14), (15), (27), (30), and part of (11) because they were procedurally defaulted in the Illinois courts. This court will also not address what are numbered claims (16), (29), or (33) because the petitioner fails to provide the basic factual background necessary to evaluate whether a constitutional violation occurred. Claims (17) - (26), (31) and (32) all involve petitioner's previously imposed death sentence, which has now been commuted, and, therefore, these claims are moot. Petitioner has failed to establish that the Illinois Supreme Court's rulings with respect to the remaining issues he raises are either contrary to, or an unreasonable application of, clearly established federal law.

I.     ISSUES RAISED ON DIRECT REVIEW

A.     PRETRIAL ISSUES

Petitioner has raised the following pretrial issues in his petition for habeas relief: (1) the Cook County jury selection system deprived petitioner of equal protection and the right to a venire that represented a fair cross-section of the community; (2) the trial court's refusal to question prospective jurors about possible racial bias denied petitioner his right to an impartial jury and fair trial; (3) the trial court's refusal to question two specific jurors about racial prejudice after it was disclosed that those jurors had close relatives who had been the victims of crime where the offenders may have been African-American, denied petitioner his right to an impartial jury and fair trial; (4) the trial court abused its discretion by excusing for cause a prospective juror because he was a news reporter; (5) the prosecutor's use of a peremptory challenge, coupled with a sham for cause challenge, to exclude two African-American jurors, violated petitioner's equal protection rights; (6) the trial court's refusal to exclude for cause a prospective juror who believed that the prosecutor's hands were tied by the rules of evidence, and the court's additional refusal to ask the remaining

5

venirepersons if they had been influenced by this and related remarks, denied petitioner his right to an impartial jury; and (7) the trial court abused its discretion by excusing for cause two prospective jurors who knew from newspaper reports that the state was seeking the death penalty.

Issue (1): Constitutionality of Venire Selection

The Illinois Supreme Court ruled that petitioner failed to show that the Cook County jury selection procedures result in systematic underrepresentation of African-Americans in the district where petitioner was tried. In doing so, the Court first cited to <u>Taylor v. Louisiana</u>, 419 U.S. 522, 528 (1975), which held that the Sixth Amendment requires a petit jury to be drawn from a fair cross-section of the community. The Court then cited <u>Duren v. Missouri</u>, 439 U.S. 357, 364 (1979), to set forth the standard for establishing a prima facie violation of the fair cross-section requirement: (1) the group allegedly excluded is a distinctive group in the community; (2) the underrepresentation of that group in venires, from which juries are selected, is not fair and reasonable in relation to the number of such persons in the community; and (3) the underrepresentation is due to the systematic exclusion of that distinctive group in the jury selection process.

As a preliminary matter, the Illinois Supreme Court, relying heavily on <u>Davis v. Warden, Joliet Correctional Institution at Stateville</u>, 867 F.2d 1003 (7th Cir. 1989), rejected petitioner's assertion that the "community" to which the fair cross-section analysis should refer is the whole of Cook County, and not just the northern half as is prescribed by Cook County Circuit Court Rule 0.4. Petitioner presents no clearly established federal law, as determined by the Supreme Court, nor is this court aware of any such law, that would result in the Illinois Supreme Court's decision refusing to invalidate Cook County Circuit Court Rule 0.4 being either contrary to or an unreasonable application of clearly established federal law. The Illinois Supreme Court then determined that there

6

was a 2.46% disparity between the percentage of African-American registered voters in the northern half of cook county and the percentage of African-American venirepersons reporting for jury duty. Based upon these findings, the Court determined that a 2.46% disparity was insufficient to demonstrate an unfair or unreasonable underrepresentation of African-Americans from petitioner's venire. In doing so, the Court noted that the disparity in petitioner's case was much less than the 39.5% and 43% differences that the United States Supreme Court found significant in Duren, 493 U.S. at 362-63, and Taylor, 419 U.S. at 424, respectively. Thus, the Court held that petitioner had failed to satisfy the second element of a Duren prima facie case. The Court also ruled that petitioner failed to meet the third element of a Duren prima facie case because venirepersons were chosen from voter registration lists, which the Court ruled to be a facially neutral method of selecting a venire.

The Illinois Supreme Court also denied petitioner's equal protection claim ruling that petitioner failed to establish a prima facie case. Specifically, the Court cited to Castaneda v. Partida, 430 U.S. 482, 494-95 (1977), and ruled that petitioner had failed to meet the second and third elements of a prima facie case in that he failed to establish a substantial underrepresentation over a significant amount of time, and a discriminatory purpose. The basis of the Court's ruling was that a 2.46% disparity was neither a substantial underrepresentation nor proof of a discriminatory purpose and that utilizing voter registration lists was a facially neutral procedure. Petitioner has made no attempt to dispute the Illinois Supreme Court's factual findings, nor does petitioner point to any contrary law. The Illinois Supreme Court's holding was not unreasonable in light of clearly established federal law, and, therefore, petitioner is denied habeas relief on this ground.

7

<u>Issues (2)-(3): Trial Judge's Refusal to Voir Dire Regarding Racial Bias</u>

The Illinois Supreme Court ruled that petitioner was not denied an impartial jury by the trial judge refusing to question the jurors regarding racial bias. In making its ruling, the Court noted that the Supreme Court of the United States in <u>Ristaino v. Ross</u>, 424 U.S. 589, 596-97 (1976), explained that a trial judge is required to question venirepersons regarding racial prejudice if "special circumstances" exist that suggest a constitutionally significant likelihood that racial prejudice might infect a defendant's trial. The Illinois Supreme Court also noted, quoting <u>Turner v. Murray</u>, 476 U.S. 28, 33 (1986), that the mere fact that the defendant is African-American and the victim is white does not constitute a "special circumstance." Thus, the Illinois Supreme Court ruled that the trial judge did not err in refusing specifically to question the venirepersons regarding racial bias because the only factor that petitioner could point to in the record to establish "special circumstances" was the fact that the victim was white and he was African-American.

The Illinois Supreme Court also recognized that <u>Turner</u> held that a capital defendant accused of an interracial crime is entitled to have venirepersons questioned regarding racial prejudice. <u>Id.</u> at 36-37. However, the Court noted that this "special circumstance" from <u>Turner</u> did not exist during the guilt phase of a trial, but only during the sentencing phase of a trial. Thus, the Illinois Supreme Court ruled that <u>Turner</u> was inapplicable to petitioner's case because he had waived a sentencing jury.

The Illinois Supreme Court's holding in regard to petitioner's second claim was neither contrary to, nor an unreasonable application of, clearly established federal law, and, therefore, petitioner is denied habeas relief on this ground.

Finally, petitioner claims that when two venirepersons testified that close family members

had been the victims of violent crimes, the trial judge erred by not specifically asking those venirepersons whether the perpetrators of the crimes were African-American. The Illinois Supreme Court ruled that the trial court did not abuse its discretion by probing whether these venirepersons could remain fair without specifically asking about racial prejudice. Petitioner points to no clearly established federal law that is either contrary to the Illinois Supreme Court's ruling, or that would render it unreasonable, and this court is aware of no clearly established federal law that requires a trial judge specifically to question venirepersons with close family members who are the victims of crime about the race of the offender absent the "special circumstances" described above. Thus, petitioner's request for habeas relief on this third ground is denied.

### Issues (4)-(7): Excusal of Venirepersons for Cause

In claims 4 through 7, petitioner alleges he was denied his constitutional rights because of various errors made by the trial judge regarding for cause and peremptory challenges.

With regards to petitioner's fourth claim, the Illinois Supreme Court ruled that petitioner was not deprived of a fair trial because the trial judge excused for cause a news reporter. The Court ruled that the trial judge was correct in excusing the reporter because it was possible that journalists would be called to testify during the trial, and the reporter expressed self-doubt as to his ability to be impartial regarding journalist testimony. (State's Ex. E at 20.) Petitioner points to no federal law that would render this ruling unreasonable. Petitioner's request for habeas relief on this fourth ground is denied.

In his fifth claim, petitioner alleges that the prosecutors at his trial violated his equal protection rights by utilizing a peremptory challenge and a "sham" for cause challenge to exclude two African-American jurors. First, the Illinois Supreme Court rejected petitioner's claim regarding

9

the for cause challenge because that juror was the reporter who had expressed self-doubt as to his ability to be impartial regarding journalist testimony. Petitioner does not dispute these facts, and does not otherwise explain how this for cause challenge denied petitioner his equal protection rights given the fact that the Illinois Supreme Court ruled the for cause challenge rested on a race neutral basis. Thus, petitioner's request for habeas relief with regard to the for cause challenge is denied.

After a jury was selected, the prosecutor at petitioner's trial peremptorily excused an African-American woman who was a prospective alternate juror. The trial judge refused a request from defense counsel to have the prosecutor explain the use of the peremptory challenge on the basis that defense counsel failed to establish a prima facie case of purposeful discrimination. The Illinois Supreme Court, citing to Batson v. Kentucky, 476 U.S. 79, 90 (1986), refused to grant petitioner relief on this claim because the Court held that the trial judge's finding that the petitioner failed to make out a prima facie case of purposeful discrimination was not against the manifest weight of the evidence. In making this ruling, the Illinois Supreme Court noted that the prosecution used a total of eight peremptory challenges and that only one of these challenges, which petitioner now contests, was used against an African-American. (State's Ex. E at 27.) Petitioner points to no facts or circumstances raising the inference that this juror was excused because of her race. Petitioner's request for habeas relief is denied on this ground.

In his sixth claim, petitioner alleges that the trial court erred in refusing to excuse a juror for cause and that the court's refusal to ask the remaining venirepersons if they had been influenced by the juror's comments denied petitioner his right to an impartial jury. Specifically, in his direct appeal petitioner complained that he had been forced to use a peremptory challenge because the trial judge refused to excuse for cause a prospective juror who stated that he thought the prosecution sometimes

10

had its hands tied by the rules of evidence and that the jury should be able to hear anything.

Regarding the refusal to excuse for cause, petitioner cites to no clearly established federal law whatsoever to argue that the Illinois Supreme Court's ruling was in error. Furthermore, in his direct appeal to the Illinois Supreme Court, petitioner cited no federal case law for the proposition that the trial judge was required to excuse the juror and only once cited to the Sixth Amendment of the United States Constitution, as it was interpreted by an Illinois court, for the proposition that a defendant has the right to an impartial jury. (State's Ex. A 120-23.) The Illinois Supreme Court agreed with the trial judge's refusal to excuse the juror for cause, noting that the juror stated that he believed in the presumption of innocence, that he understood that the State had the burden to prove the defendant guilty beyond a reasonable doubt, and that he could be fair to both sides. Finally, the Illinois Supreme Court noted that petitioner's allegations against the juror were mere fears and not evidence. Petitioner also alleges that his constitutional rights were violated when the trial judge refused to question the venirepersons regarding any prejudice that may have arisen because of the juror's remarks regarding the rules of evidence and related remarks.[2] Petitioner only alleges that his rights were violated by the judge's refusal to question the venirepersons regarding allegedly prejudicial remarks, and makes no claim regarding the actual comments. Petitioner points to no clearly established federal law to support his argument that the trial judge's refusals to act resulted in constitutional error. Petitioner has made no showing that this ruling is contrary to, or an unreasonable application of, clearly established federal law, thus, habeas relief on this ground is denied.

In his seventh claim, and last attack on the trial judge's actions during selection of the venire,

---

[2]These related remarks were presumably made by the trial judge. (State's Answer at 36.)

petitioner asserts that it was constitutional error for the trial judge to excuse for cause two jurors who knew that the state was seeking the death penalty. The Illinois Supreme Court had previously held in People v. Lucas, 132 Ill. 2d 399 (1989) that "it [is] not an abuse of discretion for a trial judge to exclude venirepersons for cause where they have learned that the defendant is eligible for the death penalty but has waived a jury for sentencing" (State's Ex. E at 21). The reasoning behind the holding in Lucas is: "the exclusion of such venirepersons prevents the contamination of the venire and the infection of the death penalty issue into jury deliberations. This sound exercise of discretion thus avoids possible prejudice to either side and attempts to insure a fair trial." (State's Ex. E at 21, citing Lucas 132 Ill. 2d at 425-26.) The Illinois Supreme Court refused petitioner's request to overrule Lucas. Presently, petitioner makes no attempt to argue that the rule laid out by the Illinois Supreme Court in Lucas violates the United States Constitution. Furthermore, this court is aware of no clearly established federal law that would render the Illinois Supreme Court's decision unreasonable. Therefore, habeas relief on this ground is denied.

### B. TRIAL ISSUES

Petitioner sets forth among his claims eight alleged errors at his trial that he contends warrant habeas relief: (8) irrelevant information about the victim denied petitioner a fair trial; (9) misleading photos showing the victim after paramedics had torn open her dress denied petitioner a fair trial; (10) prosecutorial misconduct insinuating, without foundation, that petitioner killed the victim because she resisted his attempt to rape her denied petitioner a fair trial; (11) prosecutor's opening remarks to the jury, calling attention to the victim's family and vilifying petitioner as a "human predator," and demeaning his right to a jury trial denied petitioner a fair trial; (12) the court denied petitioner a fair trial by refusing to allow hairs received from the victim's hand to be tested by an independent

laboratory; (13) the court's pre-trial order barring petitioner from arguing that the state had destroyed evidence, and related rulings, denied petitioner the right to present a defense; (14) evidence that police consulted with the State's Attorney's office and obtained a search warrant in a court of law denied petitioner a fair trial by insinuating another judge and prosecutor believed petitioner was guilty; (15) cross-examination of a defense witness, who was employed by the City of Chicago, about whether she violated a City rule requiring employees to live in the city by residing in the City of Schaumburg, was improper; and (16) prosecutorial misconduct during closing argument denied petitioner a fair trial.

### Issues (8)-(9) : Evidentiary Rulings

Petitioner alleges that evidence presented during his trial relating to the victim's religious beliefs, including the fact that she taught Sunday school, met her roommate through a church referral service, and had planned to attend church the day she was killed, denied him a fair trial. The Illinois Supreme Court ruled that this evidence was admissible character evidence relevant to whether the victim was a trusting person who would allow the petitioner to enter her apartment. (State's Ex. E at 28.) Petitioner next claims that photographs admitted into evidence showing the victim after paramedics had torn open her dress denied petitioner a fair trial. The Illinois Supreme Court ruled that the photographs were admissible because they showed the cause and manner of death, explained the location and condition of the crime scene, and were relevant to corroborate the testimony of several witnesses. (State's Ex. E at 29.) Furthermore, the Court ruled the jury was not misled by the fact that the photographs showed the top half of the victim's dress unbuttoned because the paramedic testified that he had unbuttoned the victim's dress when he arrived on the scene, and that in all other respects the photographs accurately portrayed the scene. (Id.)

13

This court's role is not to evaluate whether the Illinois Supreme Court was correct in affirming the trial court's admission of the evidence. Howard v. O'Sullivan, 185 F.3d 721, 723 (7th Cir. 1999). Even if the Illinois courts were wrong in admitting the evidence, habeas relief is only proper if the evidentiary error was of such magnitude that it took on a constitutional dimension in that it was so prejudicial that it comprised the petitioner's due process right to a fundamentally fair trial. Id. at 723-24 (citations omitted). "This means that the error must have produced a significant likelihood that an innocent person has been convicted." Id. (citations omitted). Petitioner points to no law establishing that the Illinois Supreme Court erroneously admitted this evidence, much less any clearly established federal law that would render the Court's ruling unreasonable. Moreover, given the overwhelming evidence of guilt presented at petitioner's trial, including the fact that blood matching the victim's type was found on a knife in petitioner's apartment and that his blood type matched blood in her apartment, and the fact that post-trial testing concluded that the blood in the victim's apartment matched petitioner's DNA type, petitioner cannot successfully argue that the admitted evidence, even if in error, produced a significant likelihood that an innocent person has been convicted. Therefore, habeas relief as to grounds eight and nine is denied.

### Issues (10), (11), (16): Prosecutorial Misconduct

First, petitioner argues that it was constitutional error for the prosecutor at his trial to argue that the victim was killed because she resisted petitioner's attempt to rape her. The Illinois Supreme Court ruled that considering the whole evidentiary record, particularly the facts that the victim had punctuate defensive wounds on her abdomen indicating she had been backed through her apartment possibly toward a bedroom, and that she had been found with her dress pulled up, concluded that the prosecutor's characterization of the evidence in closing argument was proper. (State's Ex. E at 37-

14

38.) Petitioner does not point to, nor is this court aware of, any clearly established federal law either contrary to, or rendering unreasonable, the ruling by the Illinois Supreme Court that the prosecutor's inferences in closing argument were reasonable given the evidence. Thus, habeas relief is denied as to this issue.

Petitioner also argues that statements by the prosecutor during opening statement referring to the victim's family, vilifying the defendant as a "human predator," and demeaning his right to a jury trial denied him a fair trial. Taking this last claim first, this court is barred from reviewing petitioner's allegation that the prosecution unconstitutionally demeaned his right to a jury trial. The Illinois Supreme Court, citing well recognized Illinois precedent, held that any claim regarding this alleged prejudicial remark was waived because petitioner had not objected to the allegedly improper comment at trial. (State's Ex. E at 35-36). Thus, this court is barred from reviewing this claim. Furthermore, petitioner makes no attempt to establish, nor can this court find, cause, prejudice, or a fundamental miscarriage of justice.[3]

The Illinois Supreme Court ruled that petitioner suffered no prejudice when the prosecutor included the victim's family among the people he greeted at the opening of his argument. (State's Ex. E at 35.) The Illinois Supreme Court also refused to reverse petitioner's conviction because the prosecution stated that the evidence would establish that on the day the victim was killed the petitioner was a "human predator," ruling that the statement did not result in any substantial prejudice to petitioner. (Id.) The Court stressed that the jury had been instructed at least twice that

---

[3]While petitioner makes no attempt to demonstrate a fundamental miscarriage of justice – his habeas petition is nothing more than thirty-three separate grounds for relief laid out in single sentences – this court notes that given the evidence at his trial, and the fact that post-trial DNA testing established that his blood was present in the victim's apartment, petitioner cannot prove actual innocence in support of any of his defaulted claims.

opening statements are not evidence and that it should disregard any statement not based on the evidence. (Id.)

The Supreme Court of the United States has ruled that "it is not enough that the prosecutor's remarks were undesirable or even universally condemned." Darden v. Wainwright, 477 U.S. 168, 181 (1986) (citation omitted). "The relevant question is whether the prosecutor's comments so infected the trial with unfairness as to make the resulting conviction a denial of due process." Id. (citation omitted). In Darden, the Supreme Court of the United States ruled that while the prosecutor's closing argument that, inter alia, incorporated the word "animal" and implied that the death penalty was the only means to prevent the defendant from committing future crimes, deserved the condemnation it had received from every reviewing court, the comments also did not deprive the defendant of a fair trial. Id. at 181-82. Petitioner has not shown that the Illinois Supreme Court's ruling was either contrary to, or an unreasonable application of, clearly established federal law. Habeas relief in regards to the prosecutor's alleged improper remarks during opening statements is denied.

In claim 16, petitioner argues that prosecutorial misconduct during closing argument denied him a fair trial. Petitioner makes no effort to elucidate to what misconduct he refers and provides no factual support whatsoever for this claim. Because petitioner has not shown this court what conduct might constitute a constitutional violation, habeas relief cannot be granted on this claim.

### Issue (12): Refusal to Allow Independent Test of Hair Samples

The Illinois Supreme Court ruled that the petitioner was afforded a reasonable opportunity to prepare his defense, despite the fact that the trial judge required the use of the State Crime Laboratory for comparisons to be made between hair found in the victim's hand and petitioner's

16

hair. (State's Ex. E at 32.) The tests were never done because petitioner refused to provide hair samples, unless experts other than those employed by the State Crime Laboratory performed the tests. (Id.) In his direct appeal to the Illinois Supreme Court, petitioner alleged that the trial court's refusal to allow an expert other than one employed by the State Crime Laboratory to test the hair samples violated the Fourteenth Amendment of the United States Constitution. In support of that assertion, petitioner cited to Miller v. Pate, 386 U.S. 1 (1967). The holding in that case, however, rested on the fact that the prosecution knowingly presented false physical evidence. Id. at 6-7. Petitioner points to no clearly established federal law that is contrary to, or would render unreasonable, the Illinois Supreme Court's decision. Thus, habeas relief is denied on this ground.

### Issue (13): Trial Court's Ruling Denied Defendant Right to Present a Defense

Petitioner argues that he was denied a fair trial because the blood samples taken from the victim's apartment were not properly maintained, thereby preventing petitioner from conducting certain tests on the blood that petitioner argues may have exculpated him. Petitioner further argues that he was denied a fair trial because the trial judge prevented him from arguing to the jury that the prosecution had "destroyed" the evidence, but allowing petitioner to tell the jury that certain tests could not be performed on the blood because it was not properly maintained by the government. The Illinois Supreme Court, citing to Arizona v. Youngblood, 488 U.S. 51 (1988), affirmed the ruling of the trial judge to allow the introduction of the blood evidence and to prohibit the petitioner from arguing the state had "destroyed" the evidence because petitioner was unable to show bad faith on the part of the government. (State's Ex. E at 33-34.) Furthermore, the Illinois Supreme Court explained that the petitioner was given a fair and adequate opportunity to defend himself against the State's allegations because he was allowed to, and in fact did, argue to the jury that certain tests were

17

not performed because the state failed to properly maintain the blood. Petitioner has failed to show how this ruling is either contrary to, or an unreasonable application of, clearly established federal law. Therefore, habeas relief is denied as to this issue.

### Issue (14): Evidence Regarding the Warrant

In Claim 14 petitioner alleges that evidence at trial establishing that the police had consulted with a State's Attorney and obtained a search warrant in a court of law, denied him a fair trial because it insinuated that another prosecutor and another judge thought that the petitioner was guilty. Citing to well recognized Illinois precedent, the Illinois Supreme Court held that this claim was waived because petitioner failed to object at trial and also failed to include the issue in his post-trial motion. (State's Ex. E at 29-30.) Thus, this court is barred from reviewing this claim. Furthermore, petitioner makes no attempt to establish, nor can this court find, cause, prejudice or a fundamental miscarriage of justice.

### Issue (15): Cross-Examination of Defense Witness

In Claim 15 petitioner alleges that the trial judge erred in allowing the State to cross-examine a defense witness regarding the fact that she violated City of Chicago employee rules requiring residence within City limits because the State introduced no testimony to support the insinuation of misconduct. The Illinois Supreme Court held that this issue was waived because petitioner failed to include the issue in his post-trial motion. (State's Ex. E at 34.) Thus, this court is barred from reviewing this claim. Furthermore, petitioner makes no attempt to establish, nor can this court find, cause, prejudice, or a fundamental miscarriage of justice.

## II. SENTENCING ISSUES

### Issues (17) - (26), (31)- (32): Sentencing Issues

Petitioner's claims regarding his sentence are moot. On January 11, 2003, former Governor George Ryan commuted petitioner's sentence from death to natural life in prison. (State's Ex. O.) The Illinois Supreme Court has held that any issues concerning a defendant's commuted death sentence are now moot. People v. Lucas, 203 Ill.2d 410, 418-19 (2002).

## III. ISSUES RAISED ON STATE POST-CONVICTION REVIEW

### Issue (27): Denial Of Right To Be Present At Critical Stage

In Claim 27, petitioner claims that he was denied his Fourteenth Amendment right to be present at a critical stage of his trial when he was excluded from the in-chambers voir dire of fifteen prospective jurors, three of whom served on the jury. This issue was not raised on direct appeal to the Illinois Supreme Court, and petitioner also failed to raise this issue in his appeal to the Illinois Supreme Court from denial of his petition for state post-conviction relief. (State's Ex. I at 24-31.) Thus, this court is barred from hearing this claim.

Petitioner did raise a related issue in his post-conviction appeal — that his appellate counsel was ineffective on direct appeal for failing to raise what is now titled Claim 27. The State brought this related claim to the attention of this court and argued that raising this ineffective assistance of counsel claim could not save the Fourteenth Amendment issue from being waived. This ineffective assistance of counsel claim is not raised by petitioner as cause for default of the Fourteenth Amendment issue.

The State argues that the issue of whether petitioner's appellate counsel was constitutionally defective for failing to raise the Fourteenth Amendment issue is not the same as the whether the

underlying Fourteenth Amendment issue actually constitutes a constitutional violation, and, therefore, that this court is barred from reviewing the Fourteenth Amendment issue because of failure to exhaust state court remedies. In support, the State points out that an ineffective assistance of appellate counsel claim arises out of the Sixth Amendment and is controlled by the two part analysis set forth in Strickland v. Washington, 466 U.S. 668 (1984), while the issue petitioner now raises arises out of the Fourteenth Amendment with the analysis focusing on whether the defendant was denied a fair and just proceeding because of his absence. See Kentucky v. Stincer, 482 U.S. 730, 745 (1987). Citing to the Seventh Circuit's decision in Momient-El v. DeTella, 118 F.3d 535, 538-39 (7th Cir. 1997), the State argues that for a claim to have been fairly presented to the state courts, and thus not waived for purposes of federal habeas review, both the same operative facts and controlling legal principles must be submitted to the state courts. Thus, according to the State, the fact that the two claims are distinguished by different legal theories, one being the Fourteenth Amendment and the other being the Sixth Amendment, requires the conclusion that the presentment of the Sixth Amendment ineffective assistance of counsel issue did not also present the underlying Fourteenth Amendment claim to the state courts.

This court agrees with the State's conclusion. Comity dictates that "when a prisoner alleges that his continuing confinement for a state court conviction violates federal law, the state court should have the first opportunity to review this claim and provide any necessary relief." O'Sullivan v. Boerckel, 526 U.S. 843, 844-45 (1999). This court cannot now rule on petitioner's alleged Fourteenth Amendment claim because he did not give the state courts a full and fair opportunity to address the issue. Furthermore, petitioner does not allege cause or prejudice for this procedural default, nor does he make a showing of actual innocence. Therefore, this court is barred from

20

reviewing this claim.

Petitioner next alleges that the constant presence of two courtroom deputy sheriffs stationed behind him during the course of the trial, and the fact that one of those deputy sheriffs escorted petitioner to the witness stand and stood behind him while he testified, denied petitioner his Sixth Amendment right to a fair trial. The Illinois Supreme Court, citing the decision in Holbrook v. Flynn, 475 U.S. 560 (1986), explained that the United States Supreme Court has held that the deployment of security personnel in a courtroom is not the type of inherently prejudicial practice that should be permitted only when justified by an essential state interest specific to trial. (State's Ex. L at 37.) The Court in Holbrook rejected the defendants argument that the presence of armed guards seated behind him throughout the trial was inherently prejudicial. Just as in Holbrook, the jury in petitioner's case was able to draw a wide range of inferences from the presence of the security guards. Holbrook, 475 U.S. at 569. Petitioner has failed to establish that the Illinois Supreme Court's ruling is either contrary to, or an unreasonable application of, clearly established federal law. Thus, petitioner's habeas petition is denied as to this ground.

### Issue (29), (33): Ineffective Assistance of Counsel

Petitioner argues that his trial and appellate counsel were ineffective. These claims are without any specific factual support. Petitioner bears the burden of establishing that he is entitled to habeas relief. This court cannot address vague, general claims without any factual basis.

### Issue (30):

Petitioner alleges that the trial court's ruling, which would have allowed the state to introduce irrelevant and highly prejudicial evidence in response to exculpatory fingerprint evidence that the

21

defense desired to introduce impermissibly impinged on petitioner's right to present a defense and violated due process of law. This issue was not raised on direct appeal, nor was it raised on state post-conviction review. Thus, this claim is defaulted, and petitioner makes no attempt to assert cause, prejudice or a fundamental miscarriage of justice.

## CONCLUSION

This court is barred from reviewing the issues raised in claims (14), (15), (27), (30), and part of (11) because they were procedurally defaulted in the Illinois courts. This court cannot address what are numbered claims (16), (29), or (33) because the petitioner failed to provide the basic factual background necessary to evaluate whether a constitutional violation occurred. Claims (17) - (26), (31), and (32) all involve petitioner's previously imposed death sentence, which has now been commuted, and, therefore, those claims are moot. Petitioner has failed to establish that the Illinois Supreme Court's rulings with respect to the remaining issues he raises are either contrary to, or an unreasonable application of, clearly established federal law. Accordingly, the petition for habeas relief is denied in its entirety.

ENTER:

JAMES F. HOLDERMAN
United States District Judge

DATE: December 16, 2003

# United States District Court
## Northern District of Illinois
### Eastern Division

USA ex rel PEEPLES

**JUDGMENT IN A CIVIL CASE**

v.

Case Number: 02 C 7253

BRILEY

☐    Jury Verdict. This action came before the Court for a trial by jury. The issues have been tried and the jury rendered its verdict.

■    Decision by Court. This action came to trial or hearing before the Court. The issues have been tried or heard and a decision has been rendered.

IT IS HEREBY ORDERED AND ADJUDGED that the petition for habeas relief is denied in its entirety. This action is dismissed in its entirety.

Michael W. Dobbins, Clerk of Court

Date: 12/16/2003

J. Smith, Deputy Clerk